# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RUVEN GACEVETO ACEVEDO, | ) | |
| Appellant, | ) ) | |
| v. | ) ) | No. 13 C 3009 |
| SC REAL ESTATE, LLC, | ) ) | Judge John J. Tharp, Jr. |
| Appellee. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This bankruptcy appeal of the denial of a sanctions motion presents the question of whether the filing of a bankruptcy case automatically stays state court eviction proceedings involving a holdover tenancy.

## BACKGROUND

On December 1, 2005, Appellant Ruven Gaceveto Acevedo ("Acevedo") and the now-defunct Acevedo Enterprises, Inc., entered into a written commercial lease agreement with the predecessor in interest to SC Real Estate, LLC ("SC"). The term of the lease agreement was five years, ending on November 30, 2010, with an option to extend the lease for an additional five years. Acevedo operated a restaurant on this leased property. During the original five-year term, SC became Acevedo's landlord. At the end of the five-year term, Acevedo did not exercise the extension option. However, Acevedo continued to pay rent, which SC accepted from December 2010 to April 2012.

In May 2012, Acevedo stopped paying rent. In July 2012, SC served Acevedo with a five-day notice demanding payment of the past due rent. Acevedo did not pay, and SC filed a forcible entry and detainer action ("Eviction Action") in state court on September 12, 2012. Acevedo filed a Chapter 7 bankruptcy petition on the morning of September 25, 2012, hours

before the first hearing in the state court proceeding. The state court set a continued hearing for October 9, 2012. The day before this hearing, on October 8, 2012, SC's counsel agreed to advise the state court that the pending bankruptcy case stayed the eviction proceedings; on the basis of that understanding, Acevedo's attorney did not attend the court hearing. However, on the morning of the October 9 hearing, SC's counsel had a change of heart, apparently after the state court ruled in a case that had been called before SC's that the automatic stay did not prevent entry of an order of possession. Whatever the reason, rather than accede to entry of a stay, SC requested and obtained an order of possession for the property in question. Upon learning that the state court had entered an order of possession, Acevedo filed an emergency motion to stay the order of possession, and the state court then vacated the order of possession.

Acevedo moved in the bankruptcy court for sanctions against SC for violating the automatic stay. The bankruptcy court denied the motion for sanctions, concluding that the automatic stay did not enjoin an eviction proceeding against a holdover tenant whose original lease term had already expired. Acevedo moved for reconsideration, but his motion was denied. Acevedo now brings this appeal.[1]

---

[1] The appellee did not file a response brief, apparently declining to defend this appeal. Part VIII of the Federal Rules of Bankruptcy Procedure give no procedural rules governing an undefended appeal. *See A. Marcus, Inc. v. Farrow*, 94 B.R. 513, 513–14 (N.D. Ill. 1989). Rule 8018 allows district judges to regulate practice "when there is no controlling law . . . in any manner consistent with federal law, these rules, Official Forms, and local rules of the circuit council or district court." Fed. R. Bankr. P. 8018. As such, this Court adopts the practices of other courts and will decide the appeal "solely on the brief of the appellant." *Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264 (7th Cir. 1988); 7th Cir. R. 31(d).

## STANDARD OF REVIEW

This appeal challenges only the bankruptcy court's conclusions of law applied to undisputed facts, so this Court reviews the bankruptcy court's ruling *de novo*. *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011).

## DISCUSSION

The Bankruptcy Code provides for an automatic stay, applicable against "all entities," whenever a bankruptcy petition is filed. 11 U.S.C. § 362(a). As applied to the context of this case, the automatic stay prohibits the "continuation" of any "judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the [bankruptcy] case." *Id.* § 362(a)(1). Congress intended the stay to apply broadly to "all proceedings." S. Rep. No. 95-989, at 50 (1978); H.R. Rep. No. 95-595, at 340 (1978). Therefore, unless an applicable exception applies, the commencement of a bankruptcy case would automatically stay any proceeding against the debtor, including an eviction action filed in state court. *See In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998); *Robinson v. Chicago Housing Authority*, 54 F.3d 316, 317–18 (7th Cir. 1995).

Subsection (b) of 11 U.S.C. § 362, however, carves out several exceptions to the automatic stay. *See generally id.* § 362(b). As relevant in this case, § 362(b)(10) excepts "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." *Id.* § 362(b)(10). In both the state court and the bankruptcy court, SC invoked this exception to avoid the automatic stay. The original lease between Acevedo and SC's predecessor in interest expired on November 30, 2010. Acevedo filed his bankruptcy petition on September 25, 2012, nearly twenty-two months after the "stated

term" of the original lease expired. Therefore, SC argued, the automatic stay did not apply to its efforts to evict Acevedo from the premises.

Acevedo does not dispute that his original lease expired. He maintains, however, that under Illinois law he acquired rights as a holdover tenant by virtue of his continued occupancy and payment of rent after the expiration of the lease. Under Illinois law, a landlord who continues to accept rent from a tenant who has held over after the expiration of an express multi-year lease is presumed to create an implied year-to-year tenancy. *Wanous v. Balaco*, 412 Ill. 545, 547, 107 N.E.2d 791, 792 (Ill. 1952); *Bransky v. Schmidt Motor Sales, Inc.,* 222 Ill. App. 3d 1056, 1061, 584 N.E.2d 892, 895 (Ill. App. Ct. 1991); *Troccoli v. L & B Prods. of Ill., Inc.*, 189 Ill. App. 3d 319, 321, 545 N.E.2d 219, 221 (Ill. App. Ct. 1989); *see also Butz v. Butz*, 13 Ill. App. 3d 341, 346–47, 299 N.E.2d 782, 786 (Ill. App. Ct. 1973) (holding that the presumption of a year-to-year holdover tenancy applies, even if the original lease contained a renewal option, if the tenant fails to affirmatively exercise the option). The presumption of a holdover tenancy may be overcome only when the landlord's actions indicate an intention not to accept the holdover tenancy. *See Troccoli*, 189 Ill. App. 3d at 321–22. SC readily accepted rent payments from December 2010 to April 2012, so an implied year-to-year tenancy arose under Illinois law. *See Wanous*, 412 Ill. at 547; *Butz*, 13 Ill. App. 3d at 346. Such a tenancy "substantially . . . is a tenancy at will except that it cannot be terminated without notice to quit." *Bellows v. Ziv*, 38 Ill. App. 2d 342, 348, 187 N.E.2d 265, 268 (Ill. App. Ct. 1962). Afterwards, the landlord may only terminate the year-to-year tenancy with at least 60 days notice before the end of the term. *Id.*; *see also* 735 ILCS 5/9-205.

In the bankruptcy court, SC did not dispute that a holdover tenancy had been created by virtue of its acceptance of Acevedo's continuing rent payments. Distinguishing a holdover

tenancy as a relationship implied in law, the bankruptcy court held that Acevedo's holdover tenancy did not constitute a new "lease" and did not extend the term of his original five-year lease. The bankruptcy judge therefore concluded that Acevedo's holdover tenancy had no relevance to the question of whether § 362(b)(10) applied to bar the eviction proceeding.

The bankruptcy court's assessment that Acevedo's holdover tenancy did not extend the term of the original lease is unquestionably correct. *See Bellows,* 38 Ill. App. 2d at 348, 187 N.E.2d at 268. At the time of the filing of Acevedo's bankruptcy petition in 2012, SC's rights as a landlord arose by implication from Acevedo's status as an accepted holdover tenant, not from the express five-year lease that had expired in 2010. But the question of whether that tenancy qualifies as a new "lease" requires further examination. As Acevedo argues, elsewhere the Bankruptcy Code states that a "lease" of real property includes not only agreements that are denominated as such, but also "any rental agreement to use real property." 11 U.S.C. § 365(m). This definition, moreover, expressly applies in the context of the § 362(b)(1) automatic stay: "For purposes of this section 365 . . . and [section] 362(b)(10), leases of real property shall include any rental agreement to use real property." When Acevedo raised this argument in a motion for reconsideration, the bankruptcy judge did not consider it because he held that Acevedo had waived the argument. Acevedo has advanced the argument again on appeal, and SC has not responded, so now the waiver is SC's: it has "waived the waiver." *United States v. Prado*, 743 F.3d 248, 251 (7th Cir. 2014) (failure to assert waiver argument on appeal is subject to the "waived waiver" doctrine).

Thus, the question of whether an implied-in-law tenancy for a year—Acevedo's tenancy—constitutes "a rental agreement to use real property" under § 365(m) is now front and center. At first blush, one is tempted to reject the proposition: a relationship that is "implied-in-

5

law" is presumptively not a relationship "implied-in-fact." In other words, one might take the view that the law implies a rental agreement between the parties because in fact there is no actual "agreement" between them, and therefore § 365(m)'s definition of "lease" ("any rental *agreement*") is not broad enough to reach a holdover tenancy implied in law.

By its terms, however, § 365(m) extends to "any rental agreement," and does not distinguish agreements implied in law from those based on evidence of an agreement-in-fact. Nor does there seem to be a reason that the Bankruptcy Code would treat an eviction proceeding against a tenant with an express oral rental agreement differently from one involving an implied rental agreement. In either case, Illinois law recognizes that the tenant has certain rights vis-à-vis the landlord by virtue of the landlord's intention to allow the tenant to occupy the premises in exchange for the payment of rent, and "the norm in bankruptcy law is that contracts (of which leases are a species) and property rights in general have the same force they would have in state court, unless the Code overrides the state entitlement." *United Airlines, Inc. v. HSBC Bank USA, N.A.*, 416 F.3d 609, 615 (7th Cir. 2005). As both tenancies and leases are recognized and convey substantive rental rights under Illinois law, and the Code speaks broadly of "any rental agreement," it seems reasonable to conclude that both fit within that the broad definition of "lease" set forth in § 365(m).

This conclusion is buttressed by the fact that, as both the Supreme Court and the Seventh Circuit have confirmed, it is substance (governed by state law) and not form that determines whether a lease or a landlord tenant relationship exists. *Butner v. United States,* 440 U.S. 48, 54–55 (1979); *United Airlines,* 416 F.3d at 612. Labels don't matter, with respect to § 365, because "substance prevails over form as a matter of federal law." What controls the determination of substance, however, is state law, *id*. at 616—here, whether state law recognizes the relationship

between the parties as one substantively involving a landlord-tenant relationship in which the tenant has rights of occupancy that can be extinguished not at will but by means of a judicial proceeding.[2] *See, e.g.*, *International Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 748 (2d Cir. 1991) ("the proper inquiry for a court in determining whether [there is a lease in substance] is whether the parties intended to impose obligations and confer rights significantly different from those arising from the ordinary landlord/tenant relationship").

And the substance of the relationship here, as defined by Illinois law, is no different than the substance of any landlord-tenant relationship embodied in an oral "rental agreement": the payment of rent in exchange for a term of occupancy. The point of the automatic stay is to halt any such proceeding intended to deprive one in bankruptcy of the rights afforded by that relationship until such time as the bankruptcy court can assess whether relief in bankruptcy is appropriate. The Court sees no reason to apply the § 362(b)(10) exception to the automatic stay to Acevedo's implied-in-law tenancy when it would not apply to an express rental agreement with precisely the same terms. *Cf., e.g.*, *In re Werbinski*, 271 B.R. 514, 516 (Bkrptcy. E.D. Mich. 2001); *In re United West, Inc.,* 87 B.R. 138, 140 (Bankr. D. Nev. 1988) ("[I]t is irrelevant for purposes of section 365(d) that the debtor did not have a written lease or that it rented on a month-to-month basis. Pursuant to section 365(m) 'any rental agreement to use real property' constitutes a lease of real property for purposes of section 365.").

Having concluded that Acevedo's holdover tenancy comes within the meaning of "lease" as defined by § 365(m), it is plain that the § 362(b)(10) exception to the automatic stay does not

---

[2] The result might well be different if Illinois law did not provide possessory rights to a holdover tenancy arising from a multiyear lease. *See, e.g., In re El Mariachi, LLC*, 2008 WL 2756921, at *2 (Bankr. D. Conn. July 13, 2008) (applying Connecticut law that holdover tenant had no legal or equitable rights and was merely a "bare possessor"); *Islip v. Ne. Int'l Airways*, 56 B.R. 247, 250 (S.D. Fla. 1986) (applying New York law that holdover tenancies are month-to-month tenancies terminable at landlord's demand).

apply. That exception applies only to leases that have terminated "by the expiration of the stated term" and so is plainly inapplicable here—either because implied tenancies do not have "stated terms" or because the implied expiration date of the year-to-year tenancy was November 30, 2012, nearly a month after SC continued to prosecute its eviction action in state court. *See Robinson v. Chicago Housing Authority*, 54 F.3d 316, 318 (7th Cir. 1995) (observing that leases may expire or terminate for a number of reasons, and that the § 362(b)(10) stay exception applies only when leases expire "in a particular way," when "the stated term of the lease has run").[3]

Because the bankruptcy court concluded that the automatic stay did not apply against SC's actions, it did not determine the fact issues of whether SC "willful[ly]" violated the stay, or the amount of any "actual damages" resulting from the stay violation. *See* 11 U.S.C. § 362(k). Remand for that purpose is therefore required.[4] The Court nevertheless offers two observations that suggest that a continued quest by Acevedo to collect sanctions may not be fruitful. First, without a "willful" violation, Acevedo would not be entitled to recover any damages for the violation, and one wonders how Acevedo will be able to convince the bankruptcy judge that SC's violation of the automatic stay was "willful" when the judge did not think SC had violated the stay at all and when, as the divergent opinions from this Court and the bankruptcy court illustrate, reasonable minds may differ about the interpretation of the provisions of the Bankruptcy Code at issue in this dispute.

---

[3] *See also* 3 Collier on Bankruptcy ¶ 362.05[10] (Alan N. Resnick & Henry J. Somer eds., 16th ed. 2012) ("It should be noted that this exception is limited to leases under which the stated term expires, not to leases terminated for other reasons."); Ginsberg & Martin on Bankruptcy § 3.02[J][1] (Susan V. Kelley, ed. 2012) ("In addition, the exception only applies when a non-residential realty lease has terminated by the expiration of the stated term of the lease. When the landlord has allegedly terminated a lease under applicable non-bankruptcy law on account of a debtor-tenant's default, the stay still protects the debtor's possessory rights until the bankruptcy court has had time to examine the validity of the termination.").

[4] *See* Fed. R. Bankr. P. 8013 (affording bankruptcy courts deference in findings of fact, to be set aside only when "clearly erroneous").

8

And second, it is not obvious that Acevedo suffered any actual damages from the violation of the stay, willful or not. Upon discovering that the state court had entered an order of possession for the property, Acevedo promptly filed an emergency motion with that state court and was successful in vacating that order. *See* Tr., Dkt. 14, at 5:8–10. So far as the record reflects, nothing at all happened in the brief interim that had any bearing on Acevedo's substantive rights; even if SC had followed the proper procedure for filing a motion for stay relief before continuing to litigate the eviction action,[5] the result would likely have been no different. The economic justification for pursuing sanctions, then, is difficult to discern.

**CONCLUSION**

For the reasons set forth above, the order of the Bankruptcy Court denying Acevedo's motion for sanctions is vacated and remanded for further proceedings consistent with this opinion.

John J. Tharp
United States District Judge

Dated: September 30, 2014

---

[5] This appears to have been SC's original plan of action. *See* Bankr. Dkt. 16, Ex. 1, at 2 (email from SC's counsel stating, "For your information, we will be requesting that the bankruptcy judge lift the automatic stay for purposes of the forcible entry and retainer").